IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEVIN G. SMITH,

                    Plaintiff,

          vs.

RICK EBERHARDT, Individual and Official
capacity; JASON DWINELL, Individual and
Official capacity; JESSE FRANK, Individual
and Official capacity; CLAYTON
BRATCHER, Individual and Official
capacity; WAYNE COUNTY SHERIFF
OFFICE, and PIERCE COUNTY SHERIFF
OFFICE/JAIL,

                    Defendants.

**8:23CV156**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Kevin G. Smith's Amended Complaint, Filing No. 22, filed in response to the Court's previous Memorandum and Order (the "Initial Review Order"), Filing No. 16. Also before the Court are the Plaintiff's Motion for Leave to File Supplemental Complaint, Filing No. 17; Motion for Extension of Time to File Amended Complaint, Filing No. 18; Motion for Court Appointment of Counsel, Filing No. 19; and Motion Requesting Permission to Amend Supplemental Complaint, Filing No. 20. With this Memorandum and Order, the Court finds the Motion to Extend should be granted. Plaintiff's other Motions and Amended Complaint are addressed below.

### I. MOTIONS TO SUPPLEMENT (Filing Nos. 17 & 20)

As an initial matter, Plaintiff's Motion for Leave to File Supplemental Complaint, Filing No. 17, and Motion Requesting Permission to Amend Supplemental Complaint, Filing No. 20 (collectively, the "Supplemental Materials"), must be denied. The allegations raised in the Supplemental Materials are wholly unrelated to Plaintiff's initial claim and

implicate the validity of Plaintiff's conviction and current confinement. The Supplemental Materials list several additional defendants, all apparently involved with Plaintiff's state court criminal proceedings, *see* Filing No. 17 at 1-2. In the Supplemental Materials, Plaintiff alleges several procedural irregularities and issues with Plaintiff's trial counsel in Plaintiff's state court criminal proceedings. *See* Filing No. 17 at 3-9; Filing No. 20 at 2-3. The prayer for relief in the Supplemental Materials requests that Plaintiff "be immediately released from unjustifiable incarceration, then be able to find an Attorney to amend his complaint unless one is appointed." Filing No. 20 at 3; *see also* Filing No. 17 at 9.

While the Supplemental Materials are plagued by a multitude of issues, leave to file the Supplemental Materials must be denied because they attack the validity of Plaintiff's conviction. Specifically, the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477,486-87 (1994), precludes further consideration of both the relief sought and the nature of the review requested in the Supplemental Materials. In *Heck*, the Supreme Court held that absent a favorable disposition of the charges or conviction, a plaintiff may not use 42 U.S.C. § 1983 to cast doubt on the legality of his conviction or confinement. *See Heck*, 512 U.S. at 486–87. Put another way, under *Heck*, a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Id.*; *see also Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). Because the nature of Plaintiff's claims and the relief he seeks is wholly barred by *Heck v. Humphrey*, the Motions to Supplement must be denied.

Moreover, "a § 1983 action cannot be used to evade the procedural requirements of petitions for habeas corpus." *Schneider v. Bowersox*, 105 F.3d 397, 400 (8th Cir. 1997). Where the relief requested in a § 1983 action is "precisely the same as that requested in [a] habeas petition—that the convictions and sentences be set aside," such claims are not appropriate in a § 1983 action. *Id.* To the extent Plaintiff actually seeks federal habeas corpus relief, i.e. to invalidate his conviction, he may do so by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Plaintiff should be aware that he must first exhaust his state court remedies before seeking federal habeas corpus relief and any habeas action will be subject to a one-year statute of limitations. *See* 28 U.S.C. § 2241(d)(1); 28 U.S.C. § 2254(b) and (c).

## II. REVIEW OF AMENDED COMPLAINT

Because the Supplemental Materials cannot be considered in this action, the operative pleading in this matter is Plaintiff's Amended Complaint, Filing No. 22. While all of Plaintiff's claims were subject to pre-service dismissal, the Court granted Plaintiff leave to file an amended complaint. *See* Filing No. 16 at 10-11. Though Plaintiff was warned that an amended complaint would supersede, not supplement, his prior pleading,[1] *see* Filing No. 16 at 11, in the interests of justice, the Court will consider the Amended Complaint as supplemental to the Complaint. *See* NECivR 15.1(b) (court may consider pro se litigant's amended pleading as supplemental to, rather than as superseding, the original pleading). The Court now conducts an initial review of Plaintiff's Amended

---

[1] Plaintiff filed a document captioned "Submission of Amended Complaint," that appears to be a notice that he filed an amended complaint, as permitted by the Court's Initial Review Order, *see* Filing No. 23. The Submission states that the Amended Complaint is "submitted to supersede, not supplant Plaintiff's initial complaint." *Id.* at 1. Because of Plaintiff's ambiguous wording and the interests of justice in this case, the Court has considered the Amended Complaint as supplemental to the original Complaint.

Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

Plaintiff is an inmate currently confined at the Nebraska Department of Correctional Services Work Ethic Camp. Filing No. 22 at 2. He brings this action for damages under 42 U.S.C. § 1983 against Rick Eberhardt, Pierce County Sheriff; Jason Dwinell, Wayne County Sheriff; Jesse Frank, Wayne County Deputy Sheriff; and Clayton Bratcher, Wayne County Deputy Sheriff (collectively, the "Individual Defendants"). Filing No. 22 at 2-3. Each of the Individual Defendants are sued in both their individual and official capacities. Id. at 2. Plaintiff also sues the Wayne County Sheriff Office and the Pierce County Sheriff Office/Jail. Id. at 3.

On July 15, 2020, Plaintiff had a dispute with his ex-wife. Filing No. 22 at 12. The next day Defendants Jessie Frank and Clayton Bratcher, both Wayne County Sheriff Deputies, questioned Plaintiff at his home. Id. Defendants Bratcher and Frank then arrested Plaintiff for weapons violations and charges related to Plaintiff's dispute with his ex-wife. Id.

Plaintiff alleges Defendants arrested him "in hurried and rough fashion, excessively placing him under arrest violently." Id. at 7. At the time of the arrest, Plaintiff was "under serious care of medical ailments necessitating prescribed medication intake on [sic] daily basis." Id. at 9. This treatment included medication for blood pressure. Id. at 10. Before taking Plaintiff to jail, Defendants Bratcher and Frank retrieved Plaintiff's medication from his dining room table. Id. at 12. The medication bottles, from the Veterans Administration, marked what the medications were and how they should be administered. Filing No. 1 at 3-4. Plaintiff alleges Defendant Jason Dwinell "was [sic] contact throughout the arrest

4

and custodial placement of plaintiff, and is understood and known to be the shot-caller in the act or direction of how to handle plaintiff's medication." Filing No. 22 at 5. Plaintiff alleges Defendant Rick Eberhardt made the decision that "the rejection or suppression of plaintiff's prescribed medication ensue, for quite sometime [sic], and until such medication could be confirmed by a physician." Id. at 6.

Defendants Frank and Bratcher booked Plaintiff into the Pierce County Jail. Id. at 12. Frank and Bratcher gave all of Plaintiff's medication to jail personnel at the Pierce County Jail. Id. Plaintiff was placed into a cold room in the Pierce County Jail that Plaintiff refers to as the "drunk cell." See id. at 8, 12. Plaintiff was not provided dinner, a blanket, or a mattress. Id. at 8-9, 12. Plaintiff was left in the cell for more than twelve hours. Id. at 10. Bratcher ignored Plaintiff's request to take the evening dose of Plaintiff's blood pressure medication. Id. at 8. The following morning, jail personnel also failed to provide the morning dose of Plaintiff's medication. Filing No. 1 at 4. Because of Plaintiff's arrest, he missed a medical appointment for the day after his arrest, July 16, 2020. Filing No. 22 at 10.

On the evening of July 16, 2020, Plaintiff developed severe chest pain and numbness on the left side of his body. Filing No. 1 at 5. The symptoms caused Plaintiff to become unstable, delirious, and sick due to high blood pressure. Filing No. 22 at 10. Doctors later informed Plaintiff this was a sign of a heart attack or stroke. Filing No. 1 at 5. As he began to experience symptoms, Plaintiff caused a commotion to get the jailers' attention. Id. After waiting for another guard to be present so she could open the cell, a jail employee determined that Plaintiff's blood pressure was 200 over 120. Id.

An unnamed jail employee called the Wayne County Sherriff's Department to transport Plaintiff to a hospital because Pierce County could not. *Id.* Plaintiff alleges the Wayne County dispatcher told Pierce County that Plaintiff's blood pressure was normal and refused to transport Plaintiff to the hospital. *Id.* Plaintiff continued to complain, and when jail personnel again took Plaintiff's blood pressure, they determined it was 197 over 125. *Id.* A jail employee stated that Plaintiff's blood pressure was going down. *Id.* Plaintiff alleges that had the stroke been treated within 72 hours, he would not have suffered permanent damage. *Id.* at 6-7.

Plaintiff brings this suit for deliberate indifference, "wanton and atypical infliction," "malfeasance misconduct under color of state law," cruel and unusual punishment, and violations of due process "as it relates to Equal Protection" under the Fifth and Fourteenth Amendments. Filing No. 22 at 3. Plaintiff seeks damages of $1,000,000 for pain and suffering caused by the deliberate indifference to his medical needs. Filing No. 22 at 12.

### III. STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase*

*Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## DISCUSSION

### A. Claims Against Sheriff's Offices and County Jail

Plaintiff asserts claims against the Wayne County Sheriff Office, the Pierce County Sheriff Office, and the Pierce County Jail. Filing No. 22 at 3. Each of these Defendants must be dismissed from this action without prejudice because they are not distinct legal entities subject to suit. *De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished) (county jail and sheriff's department not legal entities subject to suit) (collecting cases); *Mixon v. Omaha Police Dep't Officers*, No. 8:17CV325,

7

2019 WL 2143882, at *2 (D. Neb. May 16, 2019) (county department of corrections not distinct legal entity subject to suit) (collecting cases); *see also* *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such"). Accordingly, any claims against the Wayne County Sheriff Office, Pierce County Sheriff Office, and Pierce County Jail are dismissed.

## B. Claims Against Individual Defendants in Their Official Capacities

In the Amended Complaint, Plaintiff again sues each of the named Individual Defendants in their official capacities. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (internal citations omitted); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). As noted in the Initial Review Order, a county may only be liable under section 1983 if a "policy" or "custom" of the county caused a violation of the Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis Cty*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governental "custom," a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Plaintiff's allegations do not suggest any of these elements are met. Although Plaintiff need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, "he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016). The allegations in the Amended Complaint fail to allege that any actions by any of the Individual Defendants were taken pursuant to a policy or custom of Pierce or Wayne Counties. Accordingly, as with the original Complaint, the Amended Complaint has not stated a cause of action against the Individual Defendants in their official capacities. Even construed liberally, Plaintiff's allegations relate to a singular incident. No facts suggest a policy or custom caused a violation of Plaintiff's civil rights, nor do any facts suggest any Defendants were deliberately indifferent in their failure to train or supervise. Accordingly, Plaintiff's official capacity claims are dismissed.

## C. Potential Constitutional Claims Against Individual Defendants

Plaintiff's Amended Complaint lists several alleged constitutional violations, including, "(1) deliberate indifference to plaintiff's medical needs and treatment, (2) wanton and atypical infliction, (3) malfeasance misconduct under color of state law, (4)

9

cruel and unusual punishment in violation of USC Amend. 8, and (5) denial of fundamental due process of law in violation of U.S.C. Amend. 5, 15, as it relates to Equal Protection, life, limb, and liberty." Filing No. 22 at 3 (internal quotation marks omitted). Even construed broadly, these are not separate, cognizable claims. Plaintiff's principal claim is for deliberate indifference to Plaintiff's serious medical needs. Construed broadly, he also alleges that the conditions of his confinement were an improper punishment and he refers to the Equal Protection Clause. However, the allegations of the Amended Complaint, as currently stated are insufficient to provide notice of any of his potential claims.

### 1. Deliberate Indifference to Plaintiff's Medical Needs

When a pretrial detainee's[2] Fourteenth Amendment claim alleges constitutionally deficient medical care, the Eighth Amendment deliberate-indifference standard applies. *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014). To establish an Eighth Amendment claim for deprivation of medical care, an inmate must allege that the prison official was deliberately indifferent to the inmate's serious medical needs. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub*, 638 F.3d at 914. (internal quotations and citations omitted). "A serious medical

---

[2] Although not stated, the context of Plaintiff's allegations suggest he was booked into the Pierce County Jail as a pretrial detainee. However, for purposes of initial review, the Court analyzes the claims under the Eighth Amendment standard.

need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation and citation omitted).

> Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.

*Id.* at 914-15 (internal quotations and citations omitted).

Construed liberally, Plaintiff alleges that Defendants failed to properly secure and administer Plaintiff's blood pressure medication and failed to seek treatment for Plaintiff. As a result, Plaintiff became "unstable, delirious, sick," and experienced high blood pressure, leading to a stroke and unidentified "permanent ailments." Filing No. 22 at 10. The Eighth Circuit has held that "[w]hen the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up; emphasis in original). To establish this effect, Plaintiff will eventually be required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . .'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

Plaintiff's allegations contain few facts that explain or directly assert that the delay in administering his medication directly caused harm, such as a stroke. Nor do the allegations provide notice as to who caused the alleged harm. The original Complaint seemed to place this blame primarily on jail employees due to their "negligence." *See* Filing No. 1 at 5. The Amended Complaint seems to shift that blame to the named

11

Individual Defendants who "suppressed plaintiff's medication and refused to allow him to take same as prescribed." Filing No. 22 at 10. Neither the original nor Amended Complaint allege facts to establish that any of the Defendants knew of Plaintiff's condition and deliberately withheld medication and treatment. Further, the allegations state facts only for July 15, 2020, and July 16, 2020. However, Plaintiff seems to allege that lasting damage would have set in 72 hours after he requested treatment, and only vaguely alleges that Defendants refused to provide treatment for days and potentially weeks after Plaintiff was taken into custody. Without clarity on the alleged cause of Plaintiff's injury, the Amended Complaint does not sufficiently provide notice of the claim.

Moreover, Plaintiff's own allegations also seem to suggest that jail employees attempted to monitor or treat Plaintiff. While "the knowing failure to administer prescribed medicine can itself constitute deliberate indifference," *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006), a decision to initially administer conservative treatment does not necessarily constitute deliberate indifference. *See, e.g., Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 386 (8th Cir. 2014) (jail physician and nurse were not deliberately indifferent when they began logging inmate's daily blood pressure after inmate complained, when they delayed prescribing medication after several high readings, and when they failed to write a second prescription immediately after the first one went missing); *Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009) (holding defendant who decided to postpone x-ray based on medical judgment that injury was not urgent entitled to summary judgment); *Blondheim v. County of Olmsted*, 47 Fed. App'x 766 (8th Cir. 2002) (unpublished) (doctors at correctional facility were not deliberately indifferent by treating inmate's torn ACL conservatively over 4 years, mainly with Tylenol

and ace bandages, even though they knew outside orthopedic surgeon had recommended surgery). Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of deliberate indifference. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) ("At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation.").

The pleadings suggest that jail officials monitored Plaintiff's blood pressure, Filing No. 1 at 5, and that they withheld administration of medication to confirm with a physician that the medication was necessary, Filing No. 22 at 6. The allegations suggest that a representative of the Veterans Administration even told jail employees that Plaintiff's "blood pressure medication was no good." Filing No. 1 at 5. Though Plaintiff summarily alleges that the V.A. representative was a fraud, the allegations suggest that jail officials attempted to treat Plaintiff and duly investigated whether the medication was necessary. Without more factual support, Plaintiff's allegations do not meet the stringent standard for stating a plausible claim for deliberate indifference.

### 2. Conditions of Confinement

Plaintiff also complains that his placement and conditions in the Pierce County Jail were unconstitutional. A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment, under which a convicted and sentenced prisoner may be punished, as long as such punishment is not cruel and unusual. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020). In contrast, a pretrial detainee's challenge to such conditions is analyzed under the Due Process Clause of the Fourteenth

Amendment (with respect to state actors) or the Fifth Amendment (with respect to federal actors), which require that a pretrial detainee not be punished. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

To determine whether a pretrial detainee's conditions of confinement constitute "punishment," a plaintiff may show that such conditions are "intentionally punitive" or, in the absence of an "expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns*, 957 F.3d at 907 (citing *Bell*, 441 U.S. at 536-39). If the conditions are found to be arbitrary or excessive, it may be "infer[red] that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.'" *Id.* (citing *Bell*, 441 U.S. at 539).

However, the Due Process Clause is "not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328, 332-33 (1986) (also holding that the protections of the Due Process Clause are not "triggered by lack of due care by prison officials" or "merely because the defendant is a [government] official"); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (holding that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Stearns*, 957 F.3d at 908 n.5 (noting that defendants were "sheltered from liability for mere negligence under the *Bell* standard").

Plaintiff's allegations are unlikely to state a due process claim. Plaintiff alleges he was placed in a cold "drunk cell," and was not given dinner, a mattress, or his requested medication. While concerning, these allegations fall short of stating a claim for

14

unconstitutional conditions of confinement.  *See Goldman v. Forbus*, 17 F. App'x 487, 488 (8th Cir. 2001) (conditions of confinement were not unconstitutional punishment when plaintiff spent two nights in two-person cell with two others cellmates and four nights in eight-man cell with ten other men and slept on mattress on floor in both locations); *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647 (8th Cir. 1996) (pretrial detainee's due process rights not violated by confinement to space of 30 square feet and use of floor mattress for 13 nights, and confinement did not constitute "punishment"); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (finding no Eighth Amendment or due process violation where pretrial detainee was subjected to overflowed toilet in his cell for four days; to prevail, plaintiff must show officers were deliberately indifferent to risk of harm posed by conditions); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket, and mattress for four days did not violate inmate's Eighth Amendment rights); *Barnes v. Holder*, No. 1:14CV0003, 2014 WL 1478440, at *4 (E.D. Mo. Apr. 15, 2014) (no due process violation for detainee's time in "drunk tank" when cell was cold for 38 hours, cell light was on for 24 hours straight, no recreation was allowed, and bedding was removed during time in isolation) (citing cases).  If Plaintiff chooses to file a second amended complaint, he must allege facts, to the extent such facts can be credibly alleged, that show an intent to punish or that his conditions were not related to a legitimate government purpose.

### 4.  Equal Protection

Although Plaintiff references the Equal Protection Clause, Filing No. 22 at 3, Plaintiff does not directly describe the basis for his Equal Protection claim.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any

person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause essentially directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must establish that he was treated differently from others similarly situated to him. *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998). Here, Plaintiff has alleged no facts to show he was treated differently from other prisoners similarly situated to him. Because he fails to provide any facts to support an Equal Protection claim, this claim must be dismissed.

### 5. Individual Capacity Claims Against Rick Eberhardt and Jason Dwinnell

Plaintiff's original Complaint failed to state individual capacity claims against Defendants Eberhardt and Dwinnell because it failed to allege their personal involvement in Plaintiff's constitutional injuries. Filing No. 16 at 7. As stated in the Initial Review Order, Plaintiff is required to allege each individual defendant's personal involvement in the alleged constitutional violation. *Kingsley v. Lawrence Cnty., Missouri*, 964 F.3d 690, 700 (8th Cir. 2020). To show personal involvement, Plaintiff must allege the Defendants were not only "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," but that he "also dr[e]w the inference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Davis v. Oregon Cty.*, 607 F.3d 543, 548-49 (8th Cir. 2010)).

The Amended Complaint also fails to sufficiently allege Eberhardt and Dwinnell's personal involvement in his constitutional injuries. In the original Complaint, Plaintiff alleged Eberhardt and Dwinnell were liable because they were in control of training and supervising Pierce and Wayne County employees. *See* Filing No. 1 at 7; Filing No. 16 at

16

7. The Court dismissed these claims because Plaintiff failed to allege that Eberhardt and Dwinnell "[r]eceived notice of a pattern of unconstitutional acts committed by subordinates" and "[d]emonstrated deliberate indifference to or tacit authorization of the offensive acts[.]" Filing No. 16 at 7 (quoting *Parris v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)).

In the Amended Complaint, Plaintiff takes a new approach. Plaintiff now appears to assert that Eberhardt and Dwinell were personally involved in Plaintiff's arrest and in the decision to withhold Plaintiff's medication. Though Plaintiff's allegations are lengthy, they are primarily conclusions of law and provide little factual background to support each Sheriff's personal involvement. Plaintiff alleges Dwinell "knew or should have known" that Defendants Frank and Bratcher committed constitutional wrongs "specifically expressed therein the initial complaint and therein the Court's [Initial Review Order]." Filing No. 22 at 5. Plaintiff also asserts that Dwinell "was contact throughout the arrest and custodial placement of plaintiff and is understood and known to be the shot-caller in the act or direction of how to handle plaintiff's medication." *Id.* With respect to withholding Plaintiff's medication, Dwinell "advised said acts." *Id.* It is unclear whether Plaintiff is alleging that Dwinell directed how to handle Plaintiff's medication or how that direction violated Plaintiff's constitutional rights. For the reasons stated above, these allegations do not state a constitutional violation, nor do they provide fair notice to Dwinell about the nature of the claim or the basis for his involvement.

Plaintiff's claims against Eberhardt are similarly vague. Plaintiff again alleges that Eberhardt was in constant contact with the officers who arrested Plaintiff and directed "the unconstitutional and remiss acts committed in this matter." Filing No. 22 at 6. Plaintiff

concludes that it is "thus conceivable" to allege that Eberhardt and Dwinell "acted in-concert, in-cahoots, and collectively" in the unconstitutional actions that led to Plaintiff's suffering. *Id.* These allegations provide only sparse factual support for Eberhardt's direct involvement in any constitutional injury. Accordingly, Plaintiff's claims against Eberhardt are insufficient to state a plausible claim.

### 6. Claims Not Mentioned in Amended Complaint

The Amended Complaint omits several Defendants and claims that were included in the original Complaint. In the original Complaint, Filing No. 1, Plaintiff listed several John and Jane Doe defendants who appeared to be either employees of the Pierce County Jail or somehow responsible for setting Plaintiff's bail. *See* Filing No. 1 at 3-6. Plaintiff also alleged that some of the Defendants set an unconstitutional bond. *See* Filing No. 1 at 6.

Regarding the John and Jane Doe Defendants, the Court warned Plaintiff that "[i]t is generally impermissible to name fictitious parties as defendants in federal court, but 'an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" Filing No. 16 at 10 (citing *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019); *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The Court requested that, if Plaintiff filed an amended complaint, he should make reasonable efforts to identify each of the Defendants and their employing municipality. *Id.* at 11.

In the Amended Complaint, Plaintiff has not included allegations against any of the John or Jane Doe Defendants and these claims appear to be abandoned. In the Eighth

18

Circuit, "[i]t is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect." *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025) (quoting *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). However, courts in this Circuit have also recognized "that a pro se party may not fully understand the superseding effect of the second pleading." *Macon v. Cedarcroft Health Servs., Inc.*, No. 4:12-CV-1481, 2013 WL 1283865, at *4 (E.D. Mo. Mar. 27, 2013).

With these principles in mind, the Court will permit Plaintiff to file a second amended complaint that realleges any claims that Plaintiff did not intend to abandon in the Amended Complaint. **The Court specifically cautions Plaintiff that a second amended complaint will supersede all prior pleadings, and any claims not alleged in the second amended complaint will be considered abandoned.** With respect to the potentially abandoned claims, the Court also cautions Plaintiff that for these claims to proceed, the second amended complaint must cure the deficiencies of the original Complaint and Amended Complaint as described in this Memorandum and Order and in the Initial Review Order. For the Jane and John Doe Defendants, Plaintiff must make allegations specific enough to identify the unnamed Defendants and describe their alleged unconstitutional actions.[3]

---

[3] If Plaintiff chooses to reassert his claims of excessive bond, the Court further cautions Plaintiff that even if the Defendant sheriffs were permitted to decide the bond amount pursuant to local practice, quasi-judicial immunity would shield the sheriffs from liability. *John Chism Bail Bonds, Inc. v. Pennington*, 411 Fed. Appx. 927, 930 (8th Cir. 2011) ("We hold quasi-judicial absolute immunity protects the sheriff and jail administrator in their joint decision to require a sheriff's bond before releasing Williams"); *Phillips v. Pike*, No. 3:20-CV-05015, 2021 WL 4071874, at *5 (W.D. Mo. Sept. 7, 2021) (judicial immunity shielded sheriff's deputy from excessive-bond claim when long-standing practice in county court allowed law-enforcement officers to decide initial bond amount for probable-cause arrests). Therefore, absent additional facts that can plausibly be alleged, any claim for excessive bond must likely be dismissed.

## IV.  RENEWED MOTION TO APPOINT COUNSEL

As stated in the Initial Review Order, there is no constitutional or statutory right to appointed counsel in a civil case. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (per curiam).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony."  *Recca v. Omaha Police Dep't*, 859 Fed. Appx. 3, 4 (8th Cir. 2021) (unpublished) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  Plaintiff asserts that counsel is necessary because of the complexities of this case and the merits of Plaintiff's claims.  However, Plaintiff's pleading is coherent and shows he has a basic understanding of applicable law and procedure.  This case is still at the pleading stage, so there has been no discovery and no need for testimony.  As a prisoner, Plaintiff understandably faces challenges representing himself, but "most indigent prisoners will face similar challenges."  *See Recca*, 859 Fed. App'x at 5 (citing *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018)).  Having considered the factors outlined above, the request for the appointment of counsel will again be denied without prejudice to reassertion.

## V.  CONCLUSION

Plaintiff's Amended Complaint again fails to state a claim upon which relief may be granted and is subject to pre-service dismissal under 28 U.S.C. § 1915(e)(2).

Nevertheless, out of an abundance of caution, the Court will grant Plaintiff leave to file a second amended complaint within 30 days of the date of this Memorandum and Order. *See Thomas v. Children's Hosp. Omaha*, No. 8:23-CV-177, 2023 WL 7042296, at *2 (D. Neb. Oct. 26, 2023) (district courts should grant pro se plaintiffs leave to amend a complaint at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated."). If Plaintiff chooses to file, the second amended complaint must address the deficiencies described in this Memorandum and Order and the Initial Review Order. Any claims not alleged or re-alleged in the second amended complaint will be deemed waived and abandoned. If an amended complaint is not filed within 30 days, this action will be dismissed without further notice.

IT IS THEREFORE ORDERED:

1.      Plaintiff shall have 30 days in which to file a second amended complaint that states a claim upon which relief may be granted. Failure to file a second amended complaint within 30 days will result in the Court dismissing this case without prejudice, and without further notice to Plaintiff. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

2.      If Plaintiff files a second amended complaint, he shall restate the allegations of the Complaint and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. **Plaintiff is warned that a second amended complaint will supersede, not supplement, his prior pleadings**.

3.      In filing a second amended complaint, Plaintiff must address the deficiencies of the original Complaint and Amended Complaint as described in this Memorandum and Order and in the Initial Review Order. Plaintiff should be mindful to

21

explain what each Defendant did to him, when the Defendant did it, and how the Defendant's actions harmed him.

4.    The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files a second amended complaint.

5.    The Clerk of the Court is directed to send to Plaintiff a form Complaint for Violation of Civil Rights (Prisoner).

6.    The Clerk of the Court is directed to set the following pro se case management deadline: **August 27, 2025—**amended complaint due.

7.    Plaintiff's Motion for Extension of Time to File Amended Complaint, Filing No. 18, is granted.

8.    Plaintiff's Motion for Leave to File Supplemental Complaint, Filing No. 17; Motion for Court Appointment of Counsel, Filing No. 19; and Motion Requesting Permission to Amend Supplemental Complaint, Filing No. 20, are denied.

Dated this 28th day of July, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge